UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ASPEN SPECIALTY INSURANCE COMPANY,

                 Plaintiff,

  -against-

NCMIC RISK RETENTION GROUP, INC.,

                 Defendant.
-------------------------------------------------------------------X

For Online Publication Only

FILED
CLERK

9:38 am, Nov 09, 2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**ORDER**
20-CV-03439 (JMA) (ARL)

**AZRACK, United States District Judge:**

    Plaintiff Aspen Specialty Insurance Company ("Aspen") filed this declaratory judgment action against Defendant NCMIC Risk Retention Group, Inc. ("NCMIC"). Aspen seeks a judgment declaring that NCMIC has a duty to defend Aspen's insured in an underlying tort action pending in the Supreme Court of the State of New York, Nassau County. NCMIC has filed a counterclaim and seeks a declaratory judgment that it is not required to defend or indemnify Aspen's insured in the underlying action. Before the court are Aspen's motion for summary judgment and NCMIC's cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

    For the reasons set forth below, Aspen's motion for summary judgment is GRANTED in part and NCMIC's cross-motion for summary judgment is GRANTED in part and DENIED in part. Additionally, as explained below, the parties are directed to show cause, in writing, why resolution of the outstanding issues in this action should not be stayed until the underlying state court action has been decided.

!

1

## I.  BACKGROUND

A.  <u>Underlying Tort Action in State Court</u>

This diversity case stems from an alleged injury that Louise Fuller ("Fuller"), a chiropractic patient, suffered on April 3, 2018.  (NCMIC's 56.1 Resp. ¶ 5.)  Fuller was a patient of Dr. Michael Brass ("Dr. Brass"), a chiropractor who owns and operates Comprehensive Chiropractic Care, P.C. ("Comprehensive"), a chiropractic office located in East Meadow, New York.  (<u>Id.</u> ¶ 2; Fuller Compl. ¶ 2, Felter Decl., Ex. A.)  Victoria Krawchuk is a licensed massage therapist who provides massages to Dr. Brass's patients on Comprehensive's premises.  (<u>See</u> NCMIC's 56.1 Resp. ¶ 69; Krawchuk Dep. <u>passim</u>.)  As explained below, the parties in both this declaratory judgment action and in the underlying action in state court dispute whether Krawchuk was:  (a) an employee of Brass and Comprehensive or (b) merely an independent contractor.

Fuller—the plaintiff in the underlying tort action in state court—received treatment from Dr. Brass and massages from Krawchuk in Comprehensive's office. (Fuller Compl. ¶ 13.)  Fuller's complaint in the underlying action alleges that, during a massage Krawchuk performed on April 3, 2018, Krawchuk injured Fuller's left shoulder, tearing her rotator cuff.  (<u>Id.</u>)  In December 2018, Fuller filed suit against Dr. Brass, Comprehensive, and Krawchuk in state court alleging that they are all liable for her injury.  (Fuller Compl.)

Dr. Brass and Comprehensive (the "Brass Defendants") have a "professional services" insurance policy issued by NCMIC.  In the underlying action, NCMIC is providing a defense for the Brass Defendants.  Krawchuk has her own insurance policy issued by Aspen.  Pursuant to that policy, Aspen is currently providing a defense for Krawchuk in the underlying action.  While Aspen maintains that Krawchuk also qualifies as an additional insured under the Brass Defendants'

2

policy with NCMIC, NCMIC has refused to defend Krawchuk or reimburse Aspen for any defense costs.

In September 2020, the Brass Defendants filed a motion for summary judgment in the underlying state action, seeking their dismissal. (ECF No. 15.) The Brass Defendants argued that they were not negligent in treating Fuller and that they are not responsible for any negligent acts of Krawchuk because she was an independent contractor. (Id.) Fuller and Krawchuk opposed the motion for summary judgment, arguing that: (1) Dr. Brass is potentially liable under a theory of vicarious liability because Krawchuk was an employee of the Brass Defendants; and (2) even if Krawchuk is found to be an independent contractor, the Brass Defendants are also potentially liable under the theory of ostensible agency or agency by estoppel. (Id.) In response, the Brass Defendants argued that Krawchuk was an independent contractor and contended that the ostensible agency theory advanced by Fuller and Krawchuk was inapplicable to the facts here.

In June 2021, the state court denied the Brass Defendants' motion for summary judgment, explaining that Krawchuk could be found to be an employee as "there are questions of fact whether [the Brass Defendants] retained and exercised control over KRAWCHUK and the care and treatment she provided to plaintiff [Fuller]." (State Court Order at 3, ECF No. 12.) The state court's decision did not address the ostensible agency theory that Krawchuk and Fuller had advanced in their opposition papers. The state court action is still pending and awaiting a trial date in state court.

**B. NCMIC's Policy and the Instant Declaratory Judgment Action**

Currently pending before this Court are cross-motions for summary judgment filed by Aspen and NCMIC. The parties dispute whether NCMIC has a duty to defend and indemnify Krawchuck under NCMIC's policy.

3

The relevant provisions of NCMIC's policy are set out below.

NCMIC's policy contains an endorsement which changes the definition of who is an "insured" under the policy. This endorsement states:

**Persons Insured Amendatory Endorsement**

Item 3 of the "Persons Insured" section of the policy is deleted in its entirety and replaced as follows:

> Each registered, certified, licensed or unlicensed chiropractic assistant; each <u>licensed or unlicensed massage therapist</u>; each registered or licensed practical nurse or unlicensed ancillary personnel <u>employed by you</u>, but <u>only if they are acting within the scope and course of their employment duties in the providing of professional services</u>. Also, they must be <u>under the supervision</u> of a licensed chiropractor.

(NCMIC Policy, Felter Decl. Ex. D.) (emphasis added). The NCMIC Policy provides the following definition for "Professional Services":

> 8. Professional Services means services which are <u>within the scope of practice of a chiropractor</u> in the state or states in which the chiropractor is licensed.
>
> Professional Services does not include any services furnished by an insured as a practitioner of any other healing or treating art.

(<u>Id.</u> (emphasis added).)

### III.  DISCUSSION

**A. <u>Parties' Arguments</u>**

In Aspen's motion, Aspen seeks a declaratory judgment that NCMIC is obligated to defend Krawchuk under NCMIC's policy. Aspen maintains that Krawchuk qualifies as an additional insured under the policy NCMIC issued to the Brass Defendants, and that, as such, NCMIC is required to defend Krawchuk in the underlying action.

NCMIC opposes Aspen's motion and has also filed a cross-motion for summary judgment, asserting that it has no duty to defend or indemnify Krawchuk.

4

NCMIC contends that it is not required to defend or indemnify Krawchuk because: (1) Krawchuk is not an employee and is, instead, an independent contractor; (2) the massage therapy provided by Krawchuk falls outside of the scope of practice of a chiropractor and, thus, does not constitute professional services; and (3) Krawchuk was not under Dr. Brass's supervision.[1]

Aspen contends that, in order to determine whether NCMIC has a duty to defend Krawchuk, the Court should only look to the allegations of Fuller's complaint in the underlying action. According to Aspen, if the allegations in Fuller's complaint raise a "reasonable possibility" that Krawchuk is an insured under the NCMIC policy then NCMIC has a duty to defend Krawchuk.

NCMIC raises two arguments. First, NCMIC contends that it had never had a duty to defend Krawchuk. In support of this argument, NCMIC contends: (1) that the allegations in Fuller's complaint do not trigger a duty to defend; and (2) the Court can look beyond the allegations of Fuller's complaint and conclude, based on the factual evidence in the record, that NCMIC never had a duty to defend to Krawchuk.

Second, in its reply brief, NCMIC argues, in the alternative, that even if the Court were to find that Fuller's complaint in the underlying action triggered an initial duty to defend Krawchuk, NCMIC is, at the very least, entitled to a declaration that, based on the facts in the record, Krawchuk does not qualify as an insured under the policy. NCMIC contends that any obligation to defend Krawchuk based on the allegations in the complaint would terminate as of the date that this Court issues an order finding that, as a factual matter, Krawchuk is not an insured under the NCMIC policy.

---

[1] While Aspen's and NCMIC's cross-motions were pending, the state court in the underlying action denied the Brass Defendants' summary judgment motion, concluding that factual disputes precluded summary judgment on the question of whether Krawchuk was an employee.

B. <u>**NCMIC Has A Duty to Defend Based on the Allegations in Underlying Complaint**</u>

    **1. Legal Standard**

"It is well-settled that, under New York Law, '[a]n insurer's duty to defend its insured is exceedingly broad.'" <u>City of New York v. Liberty Mut. Ins. Co.</u>, No. 15 CIV. 8220 (AJN), 2017 WL 4386363, at *6 (S.D.N.Y. Sept. 28, 2017) (quoting <u>Regal Constr. Corp. v Nat'l Un. Fire Ins. Co. of Pittsburgh, PA</u>, 15 N.Y.3d 34, 37 (2010)). An "insurer will be called upon to provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage." <u>Id.</u> (quoting <u>Regal</u>, 15 N.Y.3d at 37).

This rule applies when a named insured is sued by an injured party and the insurer disputes that the claims are covered by the policy at issue. See <u>Fitzpatrick v. Am. Honda Motor Co.</u>, 78 N.Y.2d 61, 65 (1991) ("This Court has repeatedly held that an insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy."). This rule also applies when, as here, a party who is not a named insured is sued in an underlying tort action and claims that they qaulify as an additional insured under the policy. See <u>Zurich-Am. Ins. Companies v. Atl. Mut. Ins. Cos.</u>, 139 A.D.2d 379, 385, 531 N.Y.S.2d 911, 914 (App. Div. 1st Dep't 1988) (determining, based on the allegations in the underlying tort complaint, that insurer had duty to defend putative insureds where coverage turned on whether or not these parties were employees of the named insured), <u>aff'd</u>, 74 N.Y.2d 621, 539 N.E.2d 1098 (1989); <u>see</u> also <u>City of New York</u>, 2017 WL 4386363, at *6.

As such, the Court must, at least initially, look to whether the allegations in the underlying complaint establish a possibility that Krawchuk: (1) was an employee; (2) was providing professional services; and (3) was supervised by Dr. Brass.

6

### 2. Krawchuk's Employment Status

The underlying complaint sufficiently alleges that Krawchuk was an employee.  The underlying complaint alleges that Krawchuk "worked for" the Brass Defendants.  (Fuller Compl. ¶ 11.)  The underlying complaint also alleges that Krawchuk was an "agent, servant, and employee" of Comprehensive.  (Fuller Compl. ¶ 14.)  While NCMIC argues that these allegations are ambiguous in certain respects, they are sufficiently clear to establish that Aspen has a duty to defend Krawchuk.  Even assuming <u>arguendo</u> that there are some ambiguities in the underlying complaint on these points, "allegations in a complaint need not <u>clearly</u> bring the complaint within the insurance contract's indemnity provision to trigger a duty to defend." <u>City of New York</u>, 2017 WL 4386363, at *7.  "Instead, courts—including the Second Circuit (interpreting New York law), have repeatedly held that, if a complaint is <u>ambiguous</u> as to a fact material to coverage, the ambiguity must be resolved in favor of the insured."  <u>Id.</u> (citations omitted).  The underlying complaint thus sufficiently alleges that Krawchuk is an employee of the Brass Defendants.

### 3. The Massage and the Scope of Chiropractic Practice

The underlying complaint also establishes a reasonable possibility that the massage provided by Krawchuk falls within the scope of chiropractic practice.

Under New York State law, "[t]he practice of the profession of chiropractic is defined as detecting and correcting by manual or mechanical means structural imbalance, distortion, or subluxations in the human body for the purpose of removing nerve interference and the effects thereof, where such interference is the result of or related to distortion, misalignment or subluxation of or in the vertebral column." N.Y. Educ. Law § 6551(1).

NCMIC argues that Krawchuk's massage of Fuller cannot constitute "professional services" under the policy because:  (1) New York's definition of chiropractic practice set out

7

above does not include massage; (2) Krawchuk is a licensed massage therapist; and (3) Krawchuk testified that she performs "soft tissue massage and myofascial release," (Krawchuk Dep. 17), which NCMIC maintains is outside of the practice of a chiropractor as defined by § 6551.

Based on the allegations in the underlying complaint, the Court cannot conclude that the massage given by Krawchuk is outside "the scope of practice of a chiropractor" in New York. It is, at the very least, not clear that massage falls outside of the scope of chiropractic practice as defined in § 6551. As such, the Court cannot determine—based solely on the allegations in the complaint and the text of § 6551—that massage falls outside of this definition.

Notably, the website for New York State's Office of Professions provides further relevant information about the scope of chiropractic practice, explaining:

> Chiropractic is a hands-on profession; the primary treatment procedure is the chiropractic spinal adjustment. Licensed New York chiropractors are authorized to:
>
> Detect nerve interference by using their hands, instruments, x-rays or other imaging procedures (e.g., MRIs), and by ordering and interpreting laboratory tests;
>
> Adjust and/or manipulate bones in your body;
>
> Use electrical stimulation, acupressure, <u>massage</u>, ultrasound, deep heat, hot and cold packs, traction, and support devices; and
>
> Provide guidance and recommendations on lifestyle habits, posture, exercise, diet, and stress.

(New York State Office of the Professions, *Consumer Information: What You Should Know About Chiropractors and Their Services*, http://www.op.nysed.gov/prof/chiro/chirobroch.htm (last visited on Nov. 9, 2022) (emphasis added).) This explanation of chiropractic practice from New

8

York State's Office of the Professions further supports the Court's conclusion that the underlying complaint triggered a duty to defend.[2]

The manner in which New York State regulates massage therapy also suggests that massage can fall within the scope of practice of a chiropractor. Under New York law, the "practice of the profession of massage therapy is defined as engaging in applying a scientific system of activity to the muscular structure of the human body by means of stroking, kneading, tapping and vibrating with the hands or vibrators for the purpose of improving muscle tone and circulation." N.Y. Educ. Law § 7801. Although a license is generally required for an individual to provide massage therapy, New York State does not require a massage therapy license for individuals who are "authorized to practice medicine, nursing, osteopathy, physiotherapy, [and] chiropractic." N.Y. Educ. Law § 7805(1); see also id. ("Nothing contained in this article shall be construed to prohibit . . . [t]he practice of massage therapy by any person who is authorized to practice . . . chiropractic . . . in accordance with the provisions of this title.").

Additionally, the website for New York State's Office of the Professions includes further information about massage therapy and indicates that the scope of chiropractic practice includes massage therapy. Specifically, the Office of the Professions' website states that "[t]he practice of massage therapy may be done by any person who is authorized to practice medicine, nursing, physical therapy, podiatry, or chiropractic as a part of the practice of his or her profession." (New York State Office of the Professions, *Massage Therapy: Questions & Answers*, http://www.op.nysed.gov/prof/mt/mtquesans.htm (last visited on Nov. 9, 2022) (emphasis added).) This explanation provided by the Office of the Professions is "derived from administrative decisions made by the State Education Department." (Id.)

---

[2] Although neither party cites to this website, the Court may take judicial notice of this website.

The statutes cited above that govern chiropractors and massage therapy in New York—along with the guidance provided by the New York State Office of the Professions—indicate that, at the very least, massage may fall within the scope of chiropractic practice given the allegations in the underlying complaint. As such, there is a reasonable possibility that Krawchuk was providing professional services when she gave Fuller a massage.[3]

Finally, the Court notes that NCMIC's endorsement concerning massage therapists also suggests that professional services include massage. If a massage does not fall within the scope of a chiropractor's practice then the "Persons Insured Amendatory Endorsement," which covers massage therapists, makes little sense and might even be illusory. This Amendatory Endorsement states that the policy covers "licensed or unlicensed massage therapist" when they "are acting within the scope and course of their employment duties in the providing of professional services." Notably, NCMIC has not identified how a massage therapist would be acting "within the scope and course of their employment duties in the providing of professional services" if professional services excludes massages.

### 4. Dr. Brass's Supervision of Krawchuk

Contrary to NCMIC's argument, the complaint adequately alleges that Krawchuk was—as required by NCMIC's policy—"under the supervision of a licensed chiropractor." The underlying complaint explicitly alleges that Krawchuk performed the massage at issue "at the direction of Dr. Brass." (Fuller Compl. ¶ 13.) That allegation is sufficient to establish a reasonable possibility of coverage for purposes of the duty to defend.

---

[3] NCMIC insists that Krawchuk's deposition testimony—in which she stated that she performs "soft tissue massage and myofascial release"—indicates that the massage provided by Krawchuck falls outside of the scope of chiropractic practice. This deposition testimony, however, is not part of the underlying complaint and, thus, cannot be considered at this stage. Moreover, even assuming arguendo that the Court can consider this deposition testimony, this snippet of testimony and the text of § 6551 are, standing alone, insufficient to establish, as a matter of law, that such massage falls outside of the scope of chiropractic practice.

In light of the above, NCMIC has a duty to defend Krawchuk in the underlying state court action.

## C. <u>Termination of the Duty to Defend</u>

NCMIC also argues, in the alternative, that even if the allegations in Fuller's underlying complaint impose an initial duty to defend Krawchuk, this Court can look beyond the allegations of the complaint and conclude that NCMIC is no longer obligated to defend Krawchuk going forward. According to NCMIC, the deposition transcripts and other evidence establish that: (1) the massage therapy provided by Krawchuk falls outside the scope of chiropractic practice; (2) Krawchuk is an independent contractor; and (3) Dr. Brass did not supervise Krawchuk. NCMIC contends that if any of these issues are decided in its favor, then Krawchuk would not be covered by the policy and NCMIC would no longer be required to defend Krawchuk as of the date of this Court's ruling. Relatedly, NCMIC maintains that such a ruling in its favor would also establish that it had no duty to indemnify Krawchuk.

"Courts addressing the duty to defend have . . . made clear that, if the allegations in a complaint trigger the duty to defend, the insurer's duty continues until a judicial decree terminating it." <u>City of New York</u>, 2017 WL 4386363, at *14 (citing <u>Hugo Boss Fashions, Inc. v. Fed. Ins. Co.</u>, 252 F.3d 608, 622–23 (2d Cir. 2001). "In other words, a subsequent decree terminating the duty on the basis of extrinsic evidence does not retroactively eliminate the duty

11

that initially arose." Id. (citing Hugo Boss, 252 F.3d at 622–23).[4]

The critical question in this declaratory judgment action is whether, under New York law, Krawchuk is an employee or an independent contractor. Before this Court, Aspen is asserting Krawchuk's putative rights under the NCMIC policy as an additional insured, and Aspen maintains that Krawchuk is an employee. However, this same issue is also being litigated in the underlying tort action where both Fuller and Krawchuk assert that Krawchuk is an employee, in an effort to keep the Brass Defendants in the underlying tort suit as potentially liable parties. This raises the question of whether this Court should stay this action until the resolution of the underlying state court litigation.

The parties are directed to show cause why this Court should not defer ruling on the remaining issues raised by the parties' summary judgment motions and stay this action until the resolution of the underlying state court action pursuant to Wilton v. Seven Falls Co., 515 U.S. 277 (1995); Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942); and their progeny. See Nationwide Mut. Ins. Co. v. Lowe, 95 F. Supp. 2d 274, 275 (E.D. Pa. 2000) (finding abstention warranted under Wilton where duty to defend and duty to indemnify turned on employment status and same issue was also being litigated in state court); Zurich-Am. Ins. Cos., 139 A.D.2d 379, 386–87 (concluding—in declaratory judgment action between two insurance companies—that question of

---

[4] This precedent indicates that although NCMIC's duty to defend may be terminated if this Court were to find, as a factual matter, that Krawchuk is not an employee, NCMIC would still be liable for Krawchuk's defense costs until the date of such a ruling. NCMIC asserts that, to the extent it is liable for any of Krawchuk's defense costs, those costs must be divided equally between NCMIC and Aspen because, as the record indicates, both of the policies at issue purport to provide excess coverage for this loss. (See Felter Decl. Exs. D, G.) Aspen has waived any argument to the contrary as it has not opposed NCMIC's summary judgment motion on this issue. Moreover, the Court agrees with NCMIC on the merits of this issue. See Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, PA, 65 A.D.3d 12, 19, 878 N.Y.S.2d 339 (App. Div. 1st Dep't 2009) ("[W]here each policy contains an excess 'other insurance' clause, so that giving each policy's clause effect would leave the insured without primary insurance, the clauses are deemed to cancel each other out, and the insurers are required to cover the loss on a pro rata basis."). Accordingly, the Court grants NCMIC summary judgment on this discrete issue and concludes that NCMIC is only liable for half of Krawchuk's defense costs. Although Aspen seeks payment from NCMIC for the defense costs it has already incurred, Aspen has not yet offered any proof of the amount of those costs.

whether putative insureds were employees and, thus, entitled to a defense under insurance policy, posed factual and legal issues that should "left to the underlying proceedings in which" those issues would be explored), aff'd, 74 N.Y.2d 621 (1989) (stressing that the question whether the putative insured were employees raised "factual and legal issues to be resolved in the underlying actions").

Relatedly, the parties shall also address why a stay would not be warranted if this Court were to rule on the remaining issues raised by the parties' summary judgment motions and were to agree with the analysis of the state court that factual questions preclude granting NCMIC summary judgment on the question of whether Krawchuk is an employee or independent contractor.

The parties shall respond, in writing, to this Order to Show Cause by December 2, 2022. Any reply papers shall be filed by December 16, 2022.

### IIII.  CONCLUSION

For the reasons stated above, Aspen's motion for summary judgment is GRANTED in part, as the Court concludes that Fuller's underlying complaint establishes that NCMIC has a duty to defend Krawchuk.  NCMIC's cross-motion for summary judgment is DENIED to the extent that that NCMIC contends that the allegations in the complaint did not trigger a duty to defend.

Although NCMIC's duty to defend Krawchuk may be terminated if it is determined, as a factual matter, that Krawchuk is not an employee, the Court does not reach that issue at the present time and instead directs the parties to show cause, in writing, why this action should not be stayed until the underlying state court action is resolved.

The parties' responses shall be filed by December 2, 2022 and any replies shall be filed by December 16, 2022. Finally, NCMIC's motion for summary judgment is GRANTED in part, solely on the discrete issue about the allocation of defense costs.

**SO ORDERED.**

Dated:  November 9, 2022
Central Islip, New York

                                                /s/  (JMA)
                                      JOAN M. AZRACK
                                      UNITED STATES DISTRICT JUDGE